IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LONNIE FENTRESS, | ) | CASE NO. 8:17cv288 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | (42 U.S.C. §1983) |
| TRAVIS M. ROZEBOOM, in his | ) | |
| individual capacity; and | ) | |
| CITY OF BLAIR, | ) | |
| Defendants. | ) | |

**PARTIES AND JURISDICTION**

For his cause of action against the Defendant, Plaintiff Lonnie D. Fentress states and alleges as follows:

1.  Plaintiff is Lonnie D. Fentress, a citizen of the United States of America and resident of the State of Nebraska.

2.  Fentress, his two teenage sons, and their mother, live in Oakland, Burt County, Nebraska.

3.  At all relevant times herein, Fentress earned income as a bail enforcement agent employed by a bail bondsman in Council Bluffs, Iowa. In this capacity, Fentress acted under the authority of Iowa state courts to arrest criminal defendants who failed to appear for scheduled court appearances. This sometimes required Fentress to locate or apprehend fugitives in Nebraska.

1

4. Fentress also earned income as a private investigator licensed by the State of Nebraska. He routinely displayed a badge on his belt in conjunction with these duties.

5. Prior to the events alleged herein, Fentress applied for and the State of Nebraska, through the Nebraska State Patrol, issued Fentress a permit to carry a concealed firearm. The permit was issued in accordance with the Nebraska Concealed Handgun Permit Act, Neb. Rev. Stat. § 69-2427 et seq. (Reissue 2009)(hereinafter,"the CHPA"), and was valid at the time of the events alleged herein.

6. At all times relevant herein, Fentress was lawfully entitled, under Article I, Section 1 of the Nebraska Constitution, the Second Amendment of the United States Constitution, the United States Code, and all applicable state and federal laws to possess and carry a firearm.

7. Defendant Travis M. Rozeboom is a law-enforcement officer employed by the police department of the City of Blair, Nebraska. At all times relevant herein, Rozeboom acted under color of law. He is sued in his individual capacity.

8. Defendant City of Blair is a duly organized and existing City of the First Class organized under the laws of the State of Nebraska.

## JURISDICTION

9. Jurisdiction is proper pursuant to 28 U.S.C. §§ 2201 and 1331.

## FACTS

### A. Plaintiff's Lawful Conduct

10. During the late afternoon of August 6, 2013, Fentress was riding his Honda 750K motorcycle equipped with hardened saddlebags in the area of a Wal-Mart located at 1882 Holly Street, in Blair, Nebraska. Fentress's teenage son called Fentress and requested that Fentress stop at a store to buy some food for dinner.

11. At the time he received the call, Fentress was in possession of two handguns, a Smith and Wesson .40 caliber pistol and a .40 caliber Glock pistol. Fentress was carrying the revolvers in cross-draw hip holsters as he operated his motorcycle. He was wearing a Nebraska football jersey t-shirt long enough to hang over the holsters, completely concealing the firearms.

12. Fentress decided to buy his son food for dinner at the nearby Wal-Mart.

13. The Wal-Mart store had posted no notice prohibiting the carrying of concealed firearms in or on the store's premises.

14. A month earlier, Tamar Reed, a former police officer and Wal-Mart store employee, had verbally told Fentress to not openly carry firearms inside the store.

15. To comply with Reed's earlier verbal request and the CHPA, Neb. Rev. Stat. §69-2441(3), Fentress removed his firearms from their holsters and locked them in his motorcycle's hardened side compartment before entering the store, unarmed.

16. Reed observed Fentress walk into the store. Without observing a firearm, or having any reason to believe Fentress was carrying a firearm inside the store, she nevertheless called 911 dispatch and requested police come to the store.

17. During her call to dispatch, Reed did not report that Fentress had carried a firearm into the store, caused a disturbance, committed a crime, or that he was suspected of committing a crime.

18. In the Wal-Mart, Fentress purchased food for his son's dinner, and then exited the store.

19. After exiting the store, Fentress returned to his motorcycle. While standing next to his motorcycle, Fentress retrieved his handguns from the side compartment, placed them back in the holsters covered by his clothing, and prepared to exit the parking lot on his motorcycle.

**B. Defendant's Unlawful Detention and Arrest of Plaintiff**

20. Responding to Reed's call, Defendant Rozeboom went to the Wal-Mart store. He was dressed in a police uniform and driving a marked patrol car. Like Fentress, he was armed and displaying a badge.

21. When he went to the Wal-Mart store, Rozeboom knew Fentress had a state-issued Concealed Weapon Permit, and that Fentress had previously reported his employment as a "Private Investigator" and "Bounty Hunter."

22. Rozeboom also knew that Blair City Ordinance § 6-316 permitted citizens to carry loaded firearms in the City of Blair if the citizen had been issued a

4

permit pursuant to the CHPA and is in compliance with CHPA requirements. A copy of the Blair ordinance then in effect is attached hereto as Exhibit 1.

23. The requirements for issuance of a permit under the CHPA are set forth in Neb. Rev. Stat. § 69-2433 and require a permit holder to: be at citizen at least twenty-one years of age, have been a resident of Nebraska for at least 180 days; have proper vision; and to have completed training. Under the statute, such person is disqualified from holding a Concealed Handgun Permit if he: has been convicted of a felony, has been convicted of a misdemeanor crime of violence within ten years; has been found to be a mentally ill and dangerous person; or is on parole, probation, house arrest, or work release.

24. At the time of the arrest, Rozeboom had no information suggesting Plaintiff did not meet these requirements.

25. The CHPA also contains a provision, codified at Neb. Rev. Stat. § 69-2441, setting forth where a permit holder may carry a concealed handgun. Rozeboom had no information Plaintiff had carried a concealed handgun in violation of the statute's provision.

26. As it is limited to the carrying of concealed handguns, no portion of the CHPA restricts a citizen's right to openly carry a handgun in public.

27. Rozeboom executed a sworn affidavit regarding events that occurred after he went to the Wal-Mart. The affidavit is attached hereto and marked as Exhibit 2. According to his affidavit, Rozeboom's purpose in going to Wal-Mart was "to see if [Fentress] could be observed carrying a firearm in the open."

28.   According to his affidavit, while driving into the Wal-Mart parking lot, Rozeboom claimed he saw Fentress's holstered firearms on Fentress's right and left hips, partially covered by his clothing. Rozeboom claimed he observed the badge Fentress wore on his belt as well.

29.   Rozeboom alleged that he stopped Fentress "due to clearly being able to see two handguns on [Fentress's] person that were not concealed and his badge not being a law enforcement credential."

30.   Rozeboom also alleged that he "could clearly make out the frame of a handgun through [Fentress's] shirt and believed that he had a handgun secured in the holster."

31.   Approaching Fentress, Rozeboom ordered him to remove his handguns from their holsters and place them in a nearby shopping cart. Fentress complied. Rozeboom took the handguns and placed them in his police vehicle.

32.   Fentress calmly and respectfully reminded Rozeboom that he had a "Conceal Carry Permit", and that he had complied with Wal-Mart's earlier verbal request by securing the guns in his motorcycle's side compartment before going into the store.

33.   Fentress was cooperative throughout his contact with Rozeboom.

34.   Despite Fentress's explanation, Rozeboom continued the detention.

35.   Taking Fentress's guns from him, Rozeboom referred to Blair Municipal Ordinance § 6-316. Rozeboom advised Fentress that the Concealed Carry Permit "only allows [Fentress] to carry his weapons in a completely concealed manner."

6

36. Rozeboom asked Fentress why he did not wait until he was off Wal-Mart's property to return the guns to Fentress's hip holsters or "completely conceal" the handguns.

37. Rozeboom also asked if Fentress thought the combination of his shirt and the hip mounted holsters complied with the requirements of his concealed weapon permit.

38. As a Blair police officer, Rozeboom had authority to simply cite Fentress for perceived city ordinance violations in lieu of arresting him. However, Rozeboom chose to arrest Fentress, purportedly for violating Municipal Ordinance § 6-316.

39. In his arrest affidavit, Rozeboom explained that he arrested Fentress because Fentress "was not in compliance with all of the Nebraska Concealed Weapons Permit requirements because his firearms were not concealed and he possessed them while on property owned by a business that bans concealed firearms from anyone but law enforcement."

40. Rozeboom handcuffed and arrested Fentress in the Wal-Mart parking lot, a public space, with people looking on. After arresting Fentress, Rozeboom took more of Fentress's property, including his holsters, ammunition, and two pairs of hinged handcuffs.

41. Rozeboom transported Fentress, handcuffed in the rear seat of the patrol vehicle, to the Washington County jail. There, jailers commanded Fentress

to remove his clothes, relinquish them to the jailers, and change into an orange jumpsuit and shower slippers.

42. Fentress was detained and jailed until 7:14 p.m., August 8, 2013, forty-nine hours after lawfully entering Wal-Mart to buy dinner for his son.

43. After being released, Fentress encountered Rozeboom as he exited the jail. Fentress asked if the police were going to keep bothering him whenever he was in Blair. Rozeboom responded, "Oh no, I can't do that because you have a Conceal Carry Permit."

44. Based on Rozeboom's arrest and allegations, Fentress was charged with violating Blair City Ordinance § 3-316.

45. After a trial, Fentress was acquitted of the charge.

46. As a direct, proximate result of Rozeboom's actions, Fentress suffered lost wages and a damaged reputation within the community.

47. As a direct, proximate result of Rozeboom's actions, Fentress suffered severe mental distress.

### FIRST CAUSE OF ACTION – ILLEGAL DETENTION

48. The allegations in paragraphs 1 through 46 are incorporated by reference.

49. At the time of the events alleged herein, it was clearly established that the Fourth and Fourteenth Amendments of the United States Constitution prohibit law-enforcement officers from conducting an investigatory detention in the absence

of reasonable suspicion that a citizen has committed or is about to commit a crime.[1]

50. Rozeboom detained Fentress on suspicion he was not in compliance with Blair City Ordinance § 6-316. No facts known to Rozeboom or any observations made by him provided reasonable suspicion for a detention.

51. The facts upon which Rozeboom claims he conducted the detention established only that Fentress was exercising his protected right to openly carry a firearm and provided no basis to conclude he had violated the ordinance or the CHPA.

52. As a direct and proximate result of Rozeboom's detention, Fentress was unlawfully detained, and he suffered emotional distress and humiliation.

53. As a direct and proximate result of Rozeboom's actions alleged herein, Fentress suffered monetary damages.

54. These monetary damages include lost wages, attorney's fees and impound fees.

### SECOND CAUSE OF ACTION -- ILLEGAL ARREST

55. The allegations in paragraphs 1 through 46 are incorporated by reference.

---

[1] *E.g., Duffie v. City of Lincoln*, 834 F.3d 877, 884 (8th Cir. 2016) (At the time of the traffic stop at issue, September 2, 2011, "the law clearly established that a traffic stop must be supported by reasonable suspicion ... and the contours of [the] right to be free from a governmental seizure absent reasonable suspicion were sufficiently clear"); *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375 (2000).

56. At the time of the events alleged herein, it was clearly established that the Fourth and Fourteenth Amendments of United States Constitution prohibit a warrantless arrest for a felony, or a misdemeanor committed in a law enforcement officer's presence, unless supported by probable cause.[2]

57. At the time of the events alleged herein, Fentress was in compliance with §6-316, §69-2441 and all other provisions of the CHPA. Rozeboom had no information suggesting otherwise.

58. The only basis for Rozeboom's arrest was his reported observation Fentress failed to completely conceal the handguns while transferring them from the side compartment to their holsters covered by his shirt.

59. Rozeboom illegally arrested Fentress in the absence of probable cause, depriving him of his protections under the Fourth and Fourteenth Amendments of the United States.

60. As a direct and proximate result of Rozeboom's arrest, Fentress was unlawfully detained and arrested, and he suffered emotional distress, humiliation, and anguish.

61. As a direct and proximate result of Rozeboom's arrest, Fentress suffered monetary damages, including attorney fees, lost wages, and impound fees.

**THIRD CAUSE OF ACTION –VIOLATION OF U.S. CONST. AMEND. II**

---

[2] *E.g., Maryland v. Pringle,* 540 U.S. 366 (2003).

62. The allegations in paragraphs 1 through 46 are incorporated by reference.

63. At the time of the alleged events herein, it was clearly established that the Second Amendment of United States Constitution provides citizens the right to wear, bear, or carry firearms upon the person, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person.[3]

64. At the time of the events alleged herein, it was clearly established by the United States Constitution that a citizen is permitted to openly possess a handgun in a publicly accessed parking lot.[4]

65. Rozeboom violated Fentress's Second Amendment rights by arresting Fentress for exercising his right to openly possess a handgun in a publicly accessed parking lot.

66. Rozeboom violated Fentress's Second Amendment rights by unlawfully depriving Fentress of possession of legally owned and carried firearms.

67. As a direct and proximate result of Rozeboom arresting Fentress and seizing his handguns, Fentress suffered emotional distress, humiliation, and anguish.

68. As a direct and proximate result of Rozeboom arresting Fentress and seizing his handguns, Fentress suffered monetary damages, including attorney fees, lost wages, and impound fees.

---

[3] *E.g. District of Columbia v. Heller*, 554 U.S. 570, 584 (2008).
[4] *Duffie v. City of Lincoln*, 834 F.3d 877, 883 (8th Cir. 2016) ("Nebraska law permits individuals who are at least 18 years old to open carry handguns in public" (citing Neb. Rev. Stat. §§ 28-1202, 28-1204 (2009)).

## FOURTH CAUSE OF ACTION – INJUNCTIVE RELIEF

69. The allegations in paragraphs 1 through 46 are incorporated by reference.

70. Fentress still holds a valid permit issued pursuant to the Nebraska Concealed Handgun Permit Act, is a licensed private investigator, intends to continue earning income as a bail enforcement agent, and has an interest in exercising, in the City of Blair, Nebraska, the full extent of his rights to carry a firearm in public for the purpose of self-defense.

71. Plaintiff requests a declaratory judgment that the CHPA applies only to the carrying of concealed handguns and does not limit a citizen's right to openly carry and handgun in public.

72. Plaintiff requests a declaration Blair City Ordinance § 6-316 is unconstitutional if applied to a citizen failing to completely conceal a handgun while transferring it while transferring it from the side compartment of a motorcycle to its holster covered by the citizen's shirt.

## DEMAND FOR JURY TRIAL

73. Pursuant to Rule 38(b) Fed.R.Civ.P., Lonnie Fentress demands trial by jury of all issues so triable.

## RELIEF REQUESTED

74. As to Count I, II and III of his Amended Complaint, Plaintiff Lonnie Fentress prays for the following relief:

12

 

    a. A finding that Defendant Travis Rozeboom deprived him of his rights under the Second, Fourth and Fourteenth Amendments, as alleged herein;

    b. General and special damages for the emotional harm suffered;

    c. Punitive damages in the sum of $100,000.00 on each cause of action or in such sum as the Court may determine; and

    d. Attorney's fees pursuant to 42 U.S.C. §1988.

75. As to Count IV, Plaintiff requests:

    a. Declaratory judgments as set forth above; and

    b. Attorney's fees pursuant to 42 U.S.C. §1988.

LONNIE D. FENTRESS, Plaintiff,

By: *[signature]*

Adam J. Sipple, No. 20557
Johnson and Mock, PC, LLO
9900 Nicholas Street, Suite 225
Omaha, NE 68114
(402) 346-8856
Attorney for Plaintiff